McCORD (RUSSELL v.). See Case No. 12,-157.

## Case No. 8,715.

### McCORD v. The TIBER.

[6 Biss. 409;[1] 7 Chi. Leg. News, 363.]

District Court, W. D. Wisconsin. July 20, 1875.

PERSONAL INJURIES—NEGLIGENCE — DAMAGES—AT COMMON LAW — IN ADMIRALTY — OBSTRUCTING NAVIGATION — CONTRIBUTORY NEGLIGENCE — ELECTION OF REMEDY.

1. A vessel has no right to obstruct the channel by stretching a line across it. and if she does, is liable for damages sustained thereby by passing raft or vessel. A raft is under no obligation to look out for such an obstruction.

[Cited in The Swan, 19 Fed. 457.]

2. The common law doctrines of contributory negligence do not apply to admiralty law.

[Cited in Ladd v. Foster, 31 Fed. 831.]

3. The sufferer has his election to sue at common law or in admiralty, and in either case the law of the forum must prevail.

4. Damages for personal injuries for permanent spinal injuries to a pilot, disabling him from following his profession, fixed at $2,500.

[This was a suit in admiralty by David McCord against the steamboat Tiber to recover damages for personal injuries sustained in an accident.]

G. C. Hazelton and O. B. Thomas, for libellant.

Wm. Hull and Cameron & Losey, for respondent.

HOPKINS, District Judge. The libel charges that on the 4th of August, 1873. the libellant was a pilot in charge of a raft of lumber floating down and navigating the Mississippi river, in this state, and that the respondent, a steamboat duly licensed and navigated as a tow-boat, was aground at a point west of the main channel of the river, opposite Grant county, at a distance of about

six hundred feet from the Wisconsin shore; and that while she was so aground she stretched a line from the boat to a tree on the Wisconsin shore and across the main channel of the river, the part which the libellant was then and there navigating with his raft; and that the line was left and permitted to remain so near the water as to not allow the raft to pass safely under it, and that as the raft approached it, floating with the current, the line caught upon a pin on the raft, and by means thereof, it was drawn so tight that it broke the pin and swept across the raft with great force, striking the libellant who was standing thereon, on the back, and throwing him down with great violence upon the raft, by means of which he was bruised and injured in his legs, back, hips and neck, from the effects of which he suffered great pain, and was unable, and still is unable, to pursue the business of a pilot, and is permanently disabled from doing hard manual labor as he was before accustomed to do.

The evidence substantially sustains these allegations. The respondent had no right to obstruct the channel with a line across it in that manner, and the doing of such an act renders her liable for the damages sustained thereby by a passing vessel or raft. If it was for the safety of the boat to make a line fast to the shore, or to use a line attached to the shore as a necessary assistance in getting off the bar, she should have taken care to get it out of the way of all passing vessels, either by dropping it, so that they could pass over it safely, or by casting off one end. The obstruction not being removed so as to let this raft pass over or under it in safety, was manifestly illegal, and renders her liable for all injury to the raft or the persons on board of her, unless the respondent's claim of negligence on the part of the pilot of the raft (the libellant) is sustained.

The respondent's counsel claimed that if the libellant was guilty of negligence, which directly contributed to the accident, he cannot recover, even if the court should find that the injury was mainly attributable to negligence of the respondents. This is the common law rule, but it is not the rule of the civil or admiralty law, according to which this case is to be determined. The question has recently been authoritatively settled by the supreme court in Atlee v. Packet Co., 21 Wall. [88 U. S.] 389.

The libellant had his election to sue the party obstructing the stream, either at law or to proceed in admiralty; and having adopted the latter, the case must be tried and determined according to rules of law prevailing in courts of admiralty, and neither party can invoke the rules and decisions of the common law courts in its determination. The law of the forum must prevail.

At common law any negligence of the plaintiff contributing to the accident or injury defeats a recovery; but not so in ad-

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

miralty. There, when both parties are at fault, the court apportions the damages between them according to justice and equity, having due regard to the decree of negligence imputable to each; so that in admiralty, a party in fault may recover of another party, whose negligence contributed to cause the injury, a portion of the damages, while at common law a defendant must pay all damages or none.

But in admiralty there is no apportionment, except in cases of mutual neglect or fault, so that it is as necessary to inquire and ascertain the conduct of both parties in reference to the alleged injury in admiralty as at law, not for the purpose of defeating any recovery, but in order to see whether the damages should be divided, and if so, to properly divide them, having reference to the degree of fault by each in the particular occurrence.

In this case the respondent insisted that the libellant should have kept near the Wisconsin shore, where there was good water, and where the line was high enough to have allowed the raft to pass under in safety, instead of having kept in the main current, and where the sag of the line brought it the nearest to the water.

If by the exercise of ordinary care and foresight he might have done sò, this position of the respondent is well taken, but I do not think the evidence supports it. It is true the witnesses on the boat say the line was a white one, and could have been seen for half a mile if the crew on the raft had looked for it. As they had no reason to expect such an obstruction across the navigable part of the river, they had no reason to look sharp for it. There was nothing to put them on special watch therefor. The crew on the raft say they did not see it until within one hundred and fifty or two hundred yards of it, and that it was then too late to change the course of the raft so as to avoid going under where they did; that as soon as they saw it they commenced taking down the shanty on the raft, so that they could go under safely, and that they thought by so doing they could do so; but that the line was either lowered just as they reached it, or was lower than they previously supposed, so that it would not clear the raft and pins upon it; that when the line caught upon the pin and was becoming very tight the pilot or some one on the raft was about to cut it, when he was threatened by the captain of the boat with being shot if he did so, and desisted. The captain told them not to cut it and he would pay all damages. That at about that time the pin broke and the line passed over the raft with great force, knocking the libellant down and bruising his knees, shins, ankles and back, and hip, so that he was unable longer to perform his duty as pilot, and was shipped to his home in Boscobel.

The weight of the testimony exculpates the libellant from all contributory fault, and shows that the injury was caused by the negligence and carelessness of the crew in charge of the steamboat, and consequently she must bear the damages occasioned thereby.

I feel very firmly convinced that my conclusions on this branch of the case are well sustained. Indeed, the captain of the steamer settled with the owner of the lumber at the time, for his loss and for the injury to another of the hands without questioning his liability, and the evidence is very clear to my mind that he then justly appreciated the situation and his obligations springing therefrom.

The boat being liable for the injury, the question as to the amount of damages or compensation is by far the most difficult one to determine. The testimony on this point is quite meagre. The respondent offered none on that branch of the case. The libellant stated particularly his injuries and their effect upon him, and called physicians to support his theory that the injury will be permanent; that his spine is affected, and that the muscles about one hip are shrinking away. There being no evidence in contradiction of this theory, I must assume it to be true, although from the general appearance of the man, I should not have supposed his injuries were so serious or of so endurable a character.

The case shows that the plaintiff is a laboring man, forty-seven years old, with a family of five children, and he swears, and his physicians corroborate him, so far as medical testimony can be said to corroborate such facts, that he has been unable, since that injury, to follow his business of raft pilot on the river, on account of his inability to use an oar.

This being the case, the damages sustained by him are serious. Dr. Ward states, he thinks that his disability is equal to about three-fourths—in other words, as I understand him, he is now able to do only one-quarter of the work he was able to do before the injury. The doctor also stated that he thought the disability permanent to that extent.

In view of this testimony, I think the libellant should recover of the respondent and her sureties the sum of $2,500 for the injuries and damages sustained by him by the accident aforesaid, and order judgment against the respondent and her sureties for that sum, and costs to be taxed.